Morning, Your Honors. Jacob Harper for Plaintiff and Appellant Mike Murphy. This appeal touches really on one court issue. The issue is the District Court error in summarily denying Sue Esponte and without leave to amend this pro se plaintiff's complaint for Section 1983 claims alleging violations of his due process rights, and equal protection rights. Due process rights stemmed from the state's agreement in mediation to limit its discretion in considering his application for transfer to Canada. And his equal protection right claims stemmed from his allegations that the state of Idaho discriminated against Caucasian applicants for transfer in favor of Hispanic applicants. Well, Hispanics are Caucasians, so you mean ethnic. Yes, Your Honor. According to the complaint, I apologize. Yeah, no, that's fine. But the core is when the District Court denied Mr. Murphy's application, when the District Court dismissed Mr. Murphy's complaint, it did not consider these terms at all. It dismissed it. I thought I understood your argument that the District Court or the court below didn't consider all the claims. That is, that's correct. Is that your argument? That is correct. Okay. In the dismissal order. So I'm curious, I mean, is it your position that we remand so that the District Court can consider the claims in the first instance or that we review to determine whether or not there's any claims that state relief or a basis to them? I think that a remand at a minimum would be what Mr. Murphy is requiring. I mean, a remand and perhaps a chance for him to brief the issue at a minimum. The problem is the District Court did not even consider these issues. We have two options, I guess. Yes. One is to remand, the other is to go ahead and review and see if he states a claim for relief. Well, I believe he does state a claim. He should be able to state a claim. And so the two claims you think he states a claim for relief are the due process and the equal protection. Yes, Your Honor. Let's talk about the due process. Yes. How is he made out a claim for due process? Well, his due process claim is this. The State and Mr. Murphy agreed in mediation during the course of an earlier habeas claim to certain procedures by which the State would consider his application to transfer. Those procedures included giving him notice that the State would consider his transfer application, that the State would consider facts from his record in making that consideration, that the State would issue a report that accurately reflected the record, including his good behavior in prison and his... I can tell you, Greg, currently it seems like we have to strain quite a bit to try to even figure out if there's a due process claim. So I'm hoping you can tell me what that would be based on your reading of this. Sure. Because if we have trouble making it out, why would we even let him amend? Well, the due process claim is there were certain procedures. Those procedures were not complied with. What were the procedures? The procedures were giving notice to Mr. Murphy that the State was considering his claim, that the State would consider his good behavior, his lack of bad behavior in his prison record, and it would make a report based on those accurate facts. Could you tell me where in the record to find this agreement that created some sort of procedural or liberty interest? My problem was I couldn't find it. Yes. I couldn't find some right that he had to liberty or some procedure in what's called in the briefs and complainant memorandum of understanding or a mediation agreement or mediation determination or anything. All I can find is vague references to him. Well, yes, Your Honor. And all I can find in the way of rights is he has a right to have, at most, some sort of consideration given rather than a right to a transfer. Well, yes, Your Honor. I think one thing that gets conflated in the briefing is the right to have his claims, the right to have the agreement reached in the evidence. Right now I'm not asking for reference to a page in a brief. I'm asking for something either in the complaint since it was 1915 or in the documents we have that shows some sort of right. I looked in the Idaho statute, and it didn't seem to create any right. It did not. The only rights created here are based on the mediated agreement, which I – Okay. Where is it? It's cited in several places. ER-17. It's referred to. It's referred to, yes. ER-17, quote, defendants agreed to set up a fair process, and they assured the judge that the process would be cognizant of applicants' due process rights. You're going in circles. Paragraph 27, read in coordination with that. In mediation, the defendants agreed to set up an international transfer application process. This is an agreement reached in mediation that's separate from the memorandum of understanding that's referenced in the state's briefs. Is it your argument that the terms of the agreement were properly set forth in the complaint? It is my argument that they were properly referenced in the complaint, and at a minimum they provide enough to allow him leave to amend the complaint. I'm not clear as to the answer to my question. Is it a yes or no? No. I think that the primary error here is the district court denied him leave to amend and provide an opportunity to provide the amendment. So your argument is that the district court should have dismissed without prejudice the refiling? Yes. What would the amendment say? Well, part of the problem is there was no transcript to which Mr. Murphy had access to the complaint. Okay. It was pro se then, but you're a lawyer now, a fine lawyer, and I want to know whether we'd be wasting time, everybody's, and everybody's effort, if we required that the district court give him another shot at writing a complaint. If he did get another shot at writing a complaint, what would it say? Well, it would say, you know, the district, the state agreed in mediation to terms XYZ. Those terms were the state included mandatory requirements that it would provide notice within a specified time. I'm not privy to what that time is. It would provide accurate. Is this some kind of deal that was reached between him and the state? Is there mediation? There was a. I thought what happened was they didn't get anywhere. My reading of the complaint was there was a habeas case in 2002. In the course of that habeas case, Judge Bradford, the state court judge overseeing that habeas case, ordered the parties to mediation. In the mediation, the state agreed to follow a series of procedures for considering Mr. Murphy's transfer application. After the mediation, the state, instead of coming to an agreement or instead of recording those terms signed by Mr. Murphy, drafted a unilateral they call a memorandum of understanding signed by certain state officials. So the bottom line is there was an agreement reached in mediation. Well, I think you just said there wasn't an agreement. Instead, the state unilaterally developed something they called a memorandum of understanding. I'm still not clear on what it said that gave him an individual right that he has not already gotten the benefit of. Well, it stated that he would have, that the state would review his record, would consider positive facts and consider negative facts, and would create a report that reflected those positive facts and negative facts. In the complaint, Mr. Murphy states that although it issued a report, it did not accurately reflect those statements, or it did not accurately reflect those facts. And, in fact, it misstated some of the facts in consideration of the denial of Mr. Murphy's application. And you're running out of time, but can you briefly tell me what's your best argument on the equal protection claim as to why? Sure. Mr. Murphy states in his complaint that he was, certain individuals, he says Mexican nationals were granted or encouraged to transfer, and he was not. He alleges that that was on the basis of his race and his nationality. And that's the gist of his equal protection claim. Thank you. Thank you. Thank you. May it please the Court. Leslie Hayes with the Idaho Attorney General's Office, appearing as amicus curiae in this case. The district court properly dismissed this complaint, pursuant to its preliminary review under the Prisoner Litigation Reform Act. It was proper because Mr. Murphy did not sufficiently allege a due process right, and that he did not allege a violation of equal protection rights. Just a second. The judge didn't review all of the claims. How is that proper? That's correct. And under our Ninth Circuit law, how is that proper? Well, there were several complaints within the complaint that weren't reviewed, including the equal protection complaint, and I think that's because Mr. Murphy did not, and I can't speak for the district court obviously, but Mr. Murphy didn't meet the minimum pleading requirements. Examples of those are whether the proper party was named, whether any of the defendants are entitled to qualified immunity, whether respondeat superior liability exists. His First Amendment claims and allegations that he makes on his access to courts and his Eighth Amendment claims that he makes regarding the phone calls and the charges that relate to those phone calls. So I think that if you look at the totality of the complaint and all of the defenses that could have been addressed, no, the court did not address all of them, but that doesn't necessarily make the initial review order improper because it addressed the bulk of the complaints and found that there was no viable claim. Finally, we also believe that the district court did not abuse its discretion when it did not grant Mr. Murphy leave to amend his complaint because there were not just technical pleading errors, and the Office of Attorney General supports affirming the district court's dismissal of this action. Mr. Murphy did not properly address his due process rights because Idaho has not limited its official discretion in determining where an inmate will be housed in a correctional facility, and that extends to which institution within the state of Idaho, which state, if Idaho has a contract with other states, or which country that inmate will be housed in. We start with the premise that there is no due process right to make that choice, and the only due process argument that can be made is if Mr. Murphy alleges that a liberty interest was created by Idaho somehow limiting its official discretion in that matter. It was not because, as we've discussed through appellant's argument, the treaty doesn't limit that official discretion. The statute in Idaho does not limit that official discretion, and so the only way it could be limited is through the memorandum of understanding or the mediated terms, which raises the question of whether those are actually two different things. It's the AG's position that they are not. Nowhere in the complaint does it tell us what the terms of this mediation were. The only reference we have is to the memorandum of understanding and that Murphy refers to the memorandum of understanding throughout his complaint as being from the result of that mediation. Rather than follow the terms of the memorandum of understanding, which was reached in that mediation, he would rather have the court strike down that memorandum and follow the mandatory terms of the treaty. So Mr. Murphy doesn't even believe that the memorandum of understanding as stated in his complaint creates any liberty interest. In fact, he alleges that it creates exactly the opposite. It takes away rights that he believes he has. Do we have a copy of it or a sufficient quote from it to make any decisions about what it says? We don't. It's not part of the record. The best we have is what's alleged in his complaint of where he quotes that the memorandum of understanding says, which is located in paragraphs 50 through 56, 61 through 67, 69 through 72, and 82 and 83 of his complaint. The relief that Mr. Murphy also requests demonstrates that there's no liberty interest created in his complaint, or he's not alleging that a liberty interest was created, because he requests that the court comply with these allegedly mandatory terms of the treaty, which the Ninth Circuit is not. Incidentally, let me back up for a minute. When I looked at those paragraphs, I couldn't get any quotes. All I could get is his conclusions about what the memorandum of understanding signified, except in one respect. He does quote the language that says that the agreement does not limit or circumscribe the discretion of the governor in any way whatsoever. Are there other quotes or extended quotes of what the memorandum says? What you quoted sounds correct. I thought his beef was that Idaho did something wrong by giving the governor unfettered discretion. That's correct. That's what he's upset about, is that he would rather have the discretion taken away from the governor of Idaho and placed squarely within what he refers to as the mandatory terms of the international treaty. I looked at the international treaty, and I didn't see the mandatory terms leaving aside whether there's any private right of action under it. I believe it was the Ninth Circuit, but there are cases that were quoted both by Yeah, we had it on BOC about it. Right. The district court and in our briefing that there is not a private right of action under the treaty. But I mean, even leaving that aside, I didn't understand what the treaty is supposed to help him. Do you know what we should be looking at, what he's talking about? With the mediated terms or the mandatory terms of the treaty. With anything. Any right he has. No, I did not see any right that was created as alleged in his complaint. Is there a basis or a form or procedure for an inmate to try to get transferred to a different country? In Idaho? Yes. Yes, under the Memorandum of Understanding, which is not part of this record, but it does have certain steps and processes and procedures. And as not part of the record, I can assure you that our office is currently going through that steps with another inmate right now. You have a statute on it, don't you, as well as a memorandum? Idaho Statute 20-104, Transfer of Convicted Foreign Citizens under the treaty? Correct. And it's through that statute that the Idaho Department of Corrections and the governor's office has created the Memorandum of Understanding in order to determine how those will be processed and how the governor will put certain procedures towards making recommendations as to whether that transfer should occur. At this stage, we have to look at everything that Mr. Murphy alleges is true. Correct. All right. Looks like, and I'm not sure if he makes out a due process claim, you know, equal protection claim, but I guess I'm just trying to find out, figure out, and maybe I'm going back again to your statement earlier. Why wasn't there leave to amend given? The district court didn't give any reasons as to why not to give leave to amend, and I'm trying to figure out why wasn't leave to amend given. It would be our stance that leave was not granted because the complaint was factually deficient. What do you mean when you say that? Even if it was factually deficient, we look at this very liberally, and the presumption is to give leave to amend. Correct, and in most cases you would grant leave to amend, except in the case where it is a factual deficiency and the facts actually go against the claim for relief. Tell me why that is the case here. Because he has not alleged what the mediated terms were beyond what the memorandum of understanding is. I know, but why doesn't he get another chance to do that, I guess is what I'm asking. Well, he would have to come up with what these mediated terms were, and in his prayer for relief he's not looking for us to enforce any mediated terms. He's looking for the court to enforce these mandatory terms in the treaty. If you can make that much out, I'm just trying to figure out why wouldn't we give him a chance or have the district court give him a chance to amend his complaint? If he was given a chance to amend his complaint, I'm not sure that the same result wouldn't occur because his hat is stuck on the hook of the mandatory terms of the treaty, and he wants that treaty enforced. He doesn't believe that there are any other terms that he would like enforced as alleged in his complaint. How about the equal protection claim? As to the equal protection claim, his facts actually go against the right. So his conclusions state that he believes that he's been discriminated against based on his national origin because he's Canadian. But his facts allege that all inmates are equally discriminated against under the process as outlined in the Memorandum of Understanding, and he also states that there are no available resources within the law libraries as to any of these international treaties for any nationality to determine whether they are capable of applying for these transfers. So I believe that's what the factual inaccuracy is, is that in his complaint he says that all nationalities, regardless of origin, are discriminated against under this Memorandum of Understanding. Well, it seems like what he's saying is that the Mexican nationals are allowed to petition for transfer to serve their time, but he as a Canadian is not. Why wouldn't there be an amendment allowed at this point, considering the law in our circuit? He would have to at least make those bare minimum allegations that there is some sort of race-based classification or national origin-based classification. You don't think he's done that? And I do not believe that he's done that because he has stated that all nationalities are equally discriminated against under the Memorandum of Understanding. And so factually he has stated. I'm not sure if he did that. I think he pleaded. It looked to me like most of his equal protection pleading was kind of prison rumor, rather than a statement of any facts of which he would have any firm grasp of facts. But he did say at one point, the only transfers he knows that have been granted have been of Mexicans. Correct. Is that enough to justify leave to amend? In my opinion, it's not. All he says is that, quote-unquote, several Mexicans have been transferred in prior years, but he doesn't know of any that have been transferred within the last few years. I can understand why it might not be now, but I'm just trying to figure out why there wouldn't be an unallowed, why amendment would not be allowed. And the reason would be that in his allegations, he does not specifically state facts that would lead to the conclusion that there is a race-based classification at the Idaho Department of Corrections. Thank you very much. Thank you. I'll give you a minute. I think you have 39 seconds. I'll give you one minute. Just quickly, I think that Your Honors have hit on the core issue, which is why has leave to amend not been granted. I think he has the standard is leave to amend should not be provided, unless it's absolutely clear that an amendment would not provide a claim. He's provided at least a minimum of allegations that there was an agreement, which is separate from the memorandum of understanding. And in that agreement would be the basis of his due process claims. He's alleged at a minimum. There's another agreement? There's another agreement? The agreement is separate from the memorandum of understanding. Do you mean the agreement to mediate? The agreement reached in mediation. The memorandum of understanding. So there are now three agreements, an agreement to mediate, an agreement reached in mediation, and a memorandum of understanding after the agreement was not reached in mediation. No, Your Honor. There's the agreement reached in mediation. That's number one. And number two was the memorandum of understanding, which is, as Mr. Murphy states, is not an accurate reflection of the agreement, although the State seems to say that that is what is supposed to reflect the terms reached in mediation. The problem here is Mr. Murphy has an idea in his complaint of a separate agreement. That's what he should be granted leave to amend, assuming the Court is inclined to affirm dismissal. And that's the core of his due process claim. It's not that there's a memorandum of understanding and that the memorandum of understanding is the basis of this agreement. And the second issue is the equal protection claim that we discussed. Thank you very much. The case of Murphy v. Butch Otter is submitted. Thank you both very much.
judges: Alarcon, Kleinfeld, Murguia